**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Batelle Memorial Institute,**

      **Plaintiff,**

    **v.**                             **Civil Action 2:25-cv-306**
                                       **Judge James L. Graham**
                                       **Magistrate Judge Kimberly A. Jolson**

**theITSupportCenter, LLC,**

      **Defendant.**

**<u>OPINION & ORDER</u>**

Before the Court is Plaintiff Battelle Memorial Institute's Motion to Compel Discovery Responses.  (Doc. 59).  For the following reasons, the Motion is **GRANTED in part**.

**I.**      **BACKGROUND**

This case revolves around a contract dispute.  As alleged, in November 2020, Plaintiff Battelle Memorial Institute ("Battelle") issued a purchase order to Defendant theITSupportCenter, LLC ("ITSC") for IT helpdesk support services.  (Doc. 1 at ¶ 9).  The purchase order and the attached master services agreement both allowed for an initial period of performance from November 13, 2020 to November 12, 2021, with options to renew services.  (*Id.* at ¶¶ 10–11). Though a detailed account of what followed is not necessary now, in essence, Battelle alleges that ITSC poorly performed under the contracts and engaged in a pattern of overcharging Battelle.  (*Id.* at ¶¶ 12–27).  Battelle terminated the master services agreement and disconnected ITSC's access to its systems on February 15, 2025.  (*Id.* at ¶¶ 28–29).  It issued a formal termination letter four days later.  (*Id.* at ¶ 33).

Battelle alleges that following the termination, ITSC failed to confirm it deleted Batelle's confidential information as outlined in the master services agreement.  (*Id.* at ¶ 37).  Then ITSC

informed Battelle that because its termination was contrary to the parties' agreement, Battelle must pay for an extra year of services.  (*Id.* at ¶¶ 38–43).  Battelle disagrees and seeks declaratory and injunctive relief about its obligations and rights under the contracts.  (*Id.* at ¶¶ 44–62).

For its part, ITSC counters that Battelle is the one who breached the contract.  (*See* Doc. 30).  According to its pending motion for summary judgment, ITSC asks the Court to award it $301,913.76 "which equates to the fees [ITSC] would have earned over the course of the fifth year of the Contract," as well as telecommunication fees, startup fees, and reasonable attorney fees.  (Doc. 39 at 16).

Following the pleadings, the parties engaged in discovery.  Under the current case schedule, discovery was due by June 1, 2026.  (Doc. 53).  At that time, the Court also warned the parties that it would not extend the case deadlines and they were expected to work towards completing discovery in a timely and efficient manner.  (*Id.*)  Unfortunately, one business day before the discovery deadline, Battelle contacted the Court about a dispute concerning several of its discovery requests served on ITSC.  The Court ordered the parties to confer.  (Doc. 56).  When they were unable to resolve their dispute on their own, the Court set a briefing schedule for Plaintiff's Motion to Compel.  (Doc. 58).  The matter is fully briefed and ready for consideration.  (Docs. 59, 63, 64).

## II.    STANDARD

Several federal rules matter here.  Federal Rule of Civil Procedure Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Other Federal Rules detail the methods to obtain that discovery.  Rule 33 allows parties to serve on any party up to 25 written interrogatories, and Rule 34 permits parties to request that another party produce

2

documents or electronically stores information.  Fed. R. Civ. P. 33, 34.  Finally, Rule 37 allows for a party seeking discovery to move for an order to compel that discovery.  Fed. R. Civ. P. 37(a)(1).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).  "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III.    DISCUSSION

ITSC objects to several of Battelle's discovery requests.  (Doc. 59).  Battelle sorts the contested requests into four categories: (1) requests seeking financial information; (2) requests seeking customer information; (3) requests seeking personnel files; and (4) requests seeking employee headcount.  (*Id.* at 4–5).

Under the financial information umbrella, Battelle requests ITSC's "gross annual revenues, profitability, and financial statements from 2022 through 2026." (*Id.* at 4 (citing Interrogatory 14; Requests for Production 20 and 21; and Request for Admission 37); *see also* Doc. 57-2 (ITSC's discovery responses)).  The specific customer information Battelle wants is "ITSC's customer identities and amounts billed from 2022 through 2025." (Doc. 59 at 4 (citing Interrogatory 15 and Requests for Production 16 and 22); *see also* Doc. 57-2).  As for the personnel files, Battelle seeks

"employment records for employees involved in the Battelle account, including performance reviews, writeups, reprimands, and related documentation from 2022 through 2025." (Doc. 59 at 5 (citing Interrogatory 16 and Request for Production 23); *see also* Doc. 57-2). Finally, the employee headcount requests look for "monthly ITSC employee headcount data from January 2024 through January 2026. (Doc. 59 at 5 (citing Interrogatory 13 and Request for Production 21); *see also* Doc. 57-2). As a general matter, Battelle says these requests all relate to ITSC's theory of damages and its own for cause termination defense. (*See* Doc. 59 at 3 ("The cumulative result of ITSC's [damages] theory is its desire to assess a punitive penalty against Battelle that is not proportional to any actual damages to ITSC, and to reap a windfall in exchange for performing no work [during the relevant period]."). Though ITSC offered some concessions, it generally objected to these requests on relevance and proportionately grounds. (Doc. 57-2).

The Court considers each category in turn.

### A.      Financial Information

To begin, the Battelle's financial information requests ask for ITSC to (1) identify company gross revenues for 2022 through 2026; (2) produce documents showing gross revenues and profitability from 2023 through 2026, including all prepared financial statements; (3) produce documents showing number of employees from 2023 through 2026; and (4) admit its gross revenues increased from 2024 to 2025. (*See* Doc. 57-2).

Battelle submits that this financial information is relevant to ITSC's "claimed economic suffering and the enforceability of its claim for liquated damages," as well as to any steps ITSC took to mitigate its claimed losses. (Doc. 59 at 6–7). In response, ITSC argues that the parties agreed to a specific contractual damages formula, which is the basis for its damages calculation in its motion for summary judgment. (Doc. 63 at 2 (citing Doc. 39-4); *see also* Doc. 39 at 15–16).

4

And the formula provides "the non-terminating party shall be compensated in an amount equal to the duration remaining in the Agreement multiplied by the average daily usage cost prior to Effective Termination."  (Doc. 39-4 at 2; *see also* Doc. 39 at 15–16).  Because the formula does not require proof of economic loss, profit margins, overhead, or mitigation, says ITSC, its financial statements, profitability, and cost data from the pertinent time period are irrelevant.  (Doc. 63 at 2–3 ("When parties agree to a liquated-damages formula, actual financial performance is irrelevant)).  ITSC offered year-over-year percentage changes in gross and net income instead, but Battelle rejected the offer.  (*Id.* at 4).

Generally, "clauses in contracts providing for reasonable liquidated damages are recognized in Ohio as valid and enforceable."  *Samson Sales, Inc. v. Honeywell, Inc.*, 465 N.E.2d 392, 393 (Ohio 1984).  Nonetheless, in Ohio there are times when "complete freedom of contract is not permitted for public policy reasons" such as when "stipulated damages constitute a penalty.*"* *In re Graham Square, Inc.*, 126 F.3d 823, 828 (6th Cir. 1997) (citing *Lake Ridge Academy v. Carney*, 613 N.E.2d 183, 187 (Ohio 1993)).  Where "reasonable compensation for actual damages is the legitimate objective of [a] liquidated damage provision[] and where the amount specified is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty."  *Samson Sales, Inc.*, 465 N.E.2d at 393–94.

To decide whether a liquidated damages provision is a penalty, the Ohio Supreme Court instructs to use the following test:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the

5

conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Id.* at 394 (citation omitted); *see also* Ohio Rev. Code § 1302.92 ("Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."). In doing this analysis, courts "'construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract.'" *In re Graham Square, Inc.*, 126 F.3d at 829 (quoting *American Fin. Leasing & Servs. Co. v. Miller*, 4322 N.E.2d 149, 152 (Ohio 1974)). At base, "[w]hen a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced." *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 188 (Ohio 1993).

Against this backdrop, the financial information sought in the four discovery requests at issue is relevant to understanding damages should the Court find that the stipulated damages provision is a penalty. It also can shed light on the certainty of damages and whether the liquidated damages amount "bears a reasonable . . . relation to actual damages" claimed by ITSC in their summary judgment motion. *Lake Ridge Acad. v. Carney*, 613 N.E.2d at 188 (Ohio 1993). In simpler terms, the information and documents Battelle seeks are relevant to ITSC's counterclaim under Rule 26's broad reach.

Still, ITSC asserts Battelle's requests are disproportionate to the needs of this case, primarily citing confidentiality concerns and the request's scope. Specifically, ITSC says the four

requests at issue require it to "disclose highly sensitive, competitively valuable, and operationally intrusive information that has no bearing on the narrow contractual issues in dispute." (Doc. 63 at 3). Ultimately, though, concerns about the sensitive nature or confidentiality of documents should be worked through by the parties under their protective order. The Court has no reason to believe the protective order is insufficient to address ITSC's concerns, beyond ITSC's vague allusions. (*See* Doc. 63 at 4).

Finally, as to scope, the Court acknowledges that Battelle's financial information requests are broad. That does not mean they are necessarily overbroad, but the parties—not the Court—are in the best position to negotiate the balance of proportionality. In light of the Court finding that Battelle's requested discovery is relevant, the parties are **ORDERED** to meet and confer to discuss the requests' scope. The parties are **ORDERED** to file a joint status report **within ten (10) days of the date of this Order**, briefly outlining their progress and, if any disputes remain, each side's updated position. The Court expects the parties to collaborate in good faith and resolve this dispute without more Court attention.

**B.     Customer Information**

Relatedly, Battelle's customer information requests ask ITSC to (1) identify each company to which it provided IT services and the dollar value of those services between 2022 and 2025; (2) produce documents and communications in which ITSC permitted a client to terminate an IT services contract without providing thirty days notice, including documents and correspondence showing proof of terminated agreements without charging the value of the contract; and (3) produce documents and correspondence that show companies to which ITSC provided services from 2023 through 2026. (Doc. 57-2). Like before, Battelle argues this information is relevant to determining ITSC's damages and mitigation efforts. (Doc. 59 at 8–9). And like before, ITSC

7

objects, arguing mitigation is not relevant to a liquated-damages formula. (Doc. 63 at 4). ITSC also argues that because its services are "finite" its ability to replace revenue does not have bearing on damages. (*Id.*). But for the same reasons as outlined above, the Court finds the information and documents Battelle seeks relevant to the applicability of ITSC's damages ask. And ITSC's arguments pertinent to mitigation are best considered at the dispositive stage of this litigation. *Cf. Kanistros v. Holeman*, No. 20528, 2005 WL 388178 (Ohio Ct. App. 2005) ("Because penalties for breach are unenforceable, even liquidated damages provisions are subject to a duty to mitigate, and the plaintiff is then due only the actual damages suffered.").

In terms of proportionality, ITSC says it should not be required to respond to Battelle's requests because its billing rate and revenue from each customer is sensitive information that its competitors could use against it. (Doc. 63 at 4). Once again, though ITSC says even under the protective order, disclosure of its customer information creates competitive and business risks (*id.*), it does not provide any specific reason the parties' protective order is insufficient. Because ITSC does not argue producing this information would be otherwise disproportionate to the needs of this case (*see id.*), the Court **GRANTS** Battelle's Motion to Compel as to these requests. Still, the parties should make a good faith effort to address ITSC's confidentiality concerns under the operative protective order.

### C.    Personnel Files

Battelle also seeks an order compelling ITSC to (1) identify metrics/analytics it used to evaluate employee performance and productivity during 2023 through 2026; and (2) produce all employment documentation for employees involved in the Battelle account, including all performance reviews for 2022 through 2025, writeups/reprimands, agreements, and other employment related documentation. (Doc. 57-2). Battelle contends these requests seek relevant

information because Battelle asserted a termination-for-cause defense related to ITSC's poor performance and overbilling.  (Doc. 59 at 9; *see also* Doc. 31 at 4).  It says the records of the people working on its accounts can help verify performance problems.  (Doc. 59 at 9).  And it has narrowed its requests to target only three employees.  (*Id.* at 10).

In response, ITSC says Battelle's requests are intrusive, sensitive, and unnecessary.  (Doc. 63 at 5).  It argues that because Battelle did not issue a breach notice or cure notice as required by the parties' contract, termination for cause is a legally unavailable defense.  (*Id.*).  Additionally, ITSC says it does not conduct formal performance evaluations, and its employees serve all customers, not only Battelle.  (*Id.*).

Up front, the Court does not wade into the issue of whether a for-cause termination defense is legally available to Battelle.  That is a matter of law that is more appropriately addressed on summary judgment.  It is enough for the purpose of relevant discovery that Battelle has asserted it.  In other words, how ITSC's employees may have performed, whether they were disciplined, and the ways their performance was measured by ITSC is relevant to Battelle's proffered defense. The Court also finds Battelle's narrowed request seeking this information and documentation for only three key employees who worked on the Battelle account proportional to the needs of this case.

Yet, to the extent ITSC claims it does not conduct formal performance evaluations so it cannot turn over documentation, Battelle must—absent a compelling reason to think otherwise— accept that representation.  And, if the personnel files contain "intrusive" or "sensitive" information that is truly irrelevant to this matter, the parties are more than welcome to work within the confines of their protective order in attending to that information.  In this respect, Battelle's

Motion to Compel is **GRANTED**.  Again, though, the parties should discuss how their protective order applies to the documents ITSC produces.

### D.        Employee Headcount

The final set of requests for which Battelle seeks ITSC's compliance ask ITSC to (1) identify the number of ITSC employees employed at the end of each month for the 12 months preceding and following January 2025; and (2) produce documents showing the number of employees ITSC employed from 2023 through 2026, including employee rosters or headcounts. (Doc. 57-2).  Battelle says this data will allow it to determine whether ITSC had the capacity to absorb the loss of Battelle's business or if ITSC was forced to reduce staff as a result of Battelle's termination.  (Doc. 59 at 10–11).  It contends this information is relevant to actual damages and mitigation.  (*Id.*).  ITSC counters that the monthly headcount request is irrelevant and burdensome. (Doc. 63 at 5–6).  Even more, ITSC has offered year-over year percentage changes and, if necessary, month-over-month percentage changes.  (*Id.*).  It says Battelle's requests as written would require it to reconstruct payroll records in a way that would be a "massive undertaking." (*Id.* at 6).

For all the reasons discussed, the Court finds employee headcount information relevant to ITSC's counterclaim and damage ask.  In terms of scope, however, the Court notes that the parties engage in a "he-said, she-said" dynamic, with Battelle insisting the information would be easy for ITSC to obtain and ITSC countering it would be a massive undertaking. (*Compare* Doc. 59 at 11 *with* Doc. 63 at 5–6).  Ultimately, the parties are in the best position to understand the interplay between what Battelle truly needs and the time and resources ITSC must expend to respond to Battelle's requests.  Here too, it makes the most sense for the parties to engage in a good faith

discussion about the scope of Battelle's requests.  The parties are **ORDERED** to meet and confer on this issue as well, and follow the procedure outlined above.  *Supra* Section III. A.

***

As a final note, because the parties brought this dispute before the Court at such a late hour, the current dispositive motions deadline is no longer practicable (*see* Doc. 53 (setting the deadline to July 15, 2026)).  The Court **STAYS** that deadline for now to give the parties time to confer. The Court will reset the deadline following the parties' joint status update in ten days.  The parties are **WARNED** that once reset, the Court will grant no further extensions.  Additionally, the Court will consider the fee request upon receipt of the required status report.

## IV.      CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Battelle's Motion to Compel (Doc. 59).  The parties are **ORDERED** to confer on the residual issues, described above, and file a joint status report within ten (10) days.  The Court **STAYS** the dispositive motions deadline for the time being.

IT IS SO ORDERED.

Date:   July 10, 2026                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE

11